Before we start with the regular argument calendar, we'll hear argument this morning in one council motion. Jenkins v. Erffe 20-1392. Mr. Bonas. Yes. Good morning, your honor. Good morning to the court. May it please the court. This is Justin Bonas, counsel for Ben Jenkins. I think the main issue from the application that was submitted for certificate of leave to appeal is whether the court should consider the procedural bar and whether it should apply to Mr. Jenkins. Mr. Jenkins has been litigating his case from day one. I mean, this is a case that really it surrounds a heavy identification issue. All the witnesses admit that this was December 1998 at about 6 p.m. It was dark. The lone witness that knew him in the case, and this is really the pivotal witness here, George Kimpson, if that's his actual name. I mean, no one really knows what his name is. There's another named James May. He allegedly knew Mr. Jenkins and didn't identify him immediately after the shooting. He was shot. Mr. Kimpson was one of the victims in this case. And that's really a lot of the litigation in this case is surrounded on George Kimpson. Mr. Jenkins has uncovered, based upon his own investigation and investigation of other lawyers, convictions that weren't turned over by the state, the fact that he lied about his name at trial. There appears to be nothing about his testimony that is truthful. Okay. And a false Uno charge. The jury could have chosen to reject his entire testimony. And Mr. Jenkins has litigated this. At the trial, wasn't there testimony that he had different names and that his identity was called into question at that trial by the other defense witness, Mr. Walker? Wasn't that in the trial? There was, but it wasn't explored. So why would, why would you not have been able to discover this issue at that time? Well, and that goes to the basis of the ineffective claim that Mr. Jenkins has been claiming is, is this trial lawyer should have investigated that. And this is a, this is a base level failure from start to finish. I mean, and, and, and, and then after that, once you get into the post conviction hearings as a post conviction lawyer, it, it, you know, two lawyers, two separate lawyers spoke to Mr. Mr. Kimpson and he admitted to them that he wasn't sure of who, who shot him. Those are in 2003, that's a statement against penal interest that he's admitting perjury. Okay. I mean, these are things that should have been presented in post conviction motions. This is the fundamental breakdown where Martinez v. Ryan actually, I guess you could say closes the circle where Murray v. Carrier talks about substantive due process violations with regard to why a procedural bar should be set aside for somebody like Mr. Jenkins. Okay. He's just, I asked the court, I plead with the court to hear that a reasonable jurist would debate whether there are extraordinary circumstances in this case as to why, you know, with failed to meet within that one-year deadline that the AEDPA places on a defendant. And I can tell you, I have over a hundred cases. It sounds like, it sounds like you just said that the reason why he didn't discover it in a timely fashion was because, but he should have, and that the attorneys just failed to pursue it. I mean, is that your. That's part of the argument. The other, the other argument is the fact that the state should have disclosed it. Anybody disclosed, in every criminal trial, a rap sheet should be turned over. A criminal history of a defendant should be. Why is it that a defendant would have to go out there and discover that himself? It's taken years to do that. This should have been disclosed. This is their witness. It's under their, Kimson is under their control. But, you know, again, you're talking about an individual who doesn't have a lot of money, who's litigating his case. And I see this time and time again, and that one-year procedural bar, that, that time limit places in an absolutely difficult, it's such a tremendous hurdle for a defendant when you're trying to get to the truth. And, you know, this man has been sentenced to an extraordinary amount of time. And we asked that he be heard. We asked that the court hear his claims. That's all we're asking for. Thank you. I mean, if there are any other questions, I'll be happy to answer them. Mr. Parker. Oh, no, I have no questions. I'm okay. Thank you. Mr. Proto. Good morning. May it please the court. My name is Michael Proto. For the record, that's spelled P-R-O-T-O. I'm with the chief state's attorney's office in Connecticut and I represent the respondent. I don't really have too much to say other than, you know, our position mirrors the well-reasoned analysis done by the district court in this case. And it seems to us that for the same reasons mentioned in that analysis, that jurists of reasons would not disagree with respect to the issue of the ineffective assistance claims. They've essentially been now litigated three times in the state court. And then again, at the federal level and Judge Dooley's determination that he presented no credible evidence of actual innocence, I think is town. So we would just rest on Judge Dooley's well-reasoned analysis. I'm certainly happy to answer any questions. Judge Parker. Oh, no, I have no questions. Judge Manasci. Well, what about this problem that maybe he could have discovered the identity of Mr. Kimpson, but that his attorney was ineffective at the time? Well, you know, I think if I, and I beg the court's forgiveness, I came to this trial, that came to this case on Friday, and I've done my best to get through the record. My recollection is that attorney Coffin, who represented the petitioner in the first trial, made what I think all of the courts and at least Judge Dooley, I believe, felt was a very cogent point. And that was that the fact that he identified the petitioner was what was critical, not necessarily what his real name was or what, you know, where he was born, that kind of thing. But that much of that got in front of the jury anyway, because there was, as one of your honors pointed out, there was the testimony that he did have aliases and different kind of identifying information. And I think that Judge Dooley's point on that is quite on point. So that, I don't believe that that would have altered any outcome. Are you saying it's not even new information? Well, I think that it was new at some point, but I think that it knew, I think it was discoverable. I think that it was known at least as of the date of the trial where that testimony was made. His testimony was that he admitted to having the aliases, including this Jamelle name. And presumably there was more information during the state habeas proceedings that could have been uncovered is the argument, I take it. Yeah, I think that's correct, Your Honor. And I think there's probably an accurate depiction. But whether or not it would have changed the outcome, I think is the question. And I think that the critical inquiry, as Attorney Coffin noted, was the actual identification of the petitioner and not so much that the witness had this other identifying information. And also that some of it was really the absence of information, because I think, for example, with respect to where he was born and whether he was born in New Haven and that kind of thing, I don't believe it was ever shown that he was not. I think it was just not shown or showable that he was. So I think a lot of it was the absence of evidence rather than the evidence of absence. So I don't believe that our position is it would not have altered the outcome of the trial or even of any of the habeas, the subsequent habeas. But isn't the question whether it could have been discovered at the time? I mean, we're not deciding whether there was prejudice. We're deciding whether he should be excused from the deadline. So that's true. If they didn't turn over the information at the time and so he couldn't discover the guy's real identity and his criminal history, and that would have. I mean, he is at least competent to make the argument that that should might have changed the outcome. Why isn't that an excuse? Well, I think I think that Judge Dooley's sort of analysis on the time and my understanding is he's not really challenging her analysis with respect to the time. And I think that she discusses that and talks about how it still leaves him with extra time from the time that he discovered the or that that was discoverable through the through the use of due diligence. You mean during the state habeas proceeding or. Yes. And the office. I have nothing else to add, Your Honor. Judge Parker, do you have any questions? I'm now. Judge Manasci? I'm fine, thanks. All right. Thank you very much. Thank you. To both counsel, we will reserve decision and we'll return to the regular argument calendar. Thank you, Your Honor. Thank you. Thank you, Mr. Bones. Have a good day. Yep. You too. Bye-bye.